CAMDEN C. DIKE AND THOMAS SCOTT, RESPONDENTS, v. ALBERT H. REITLINGER AND OTHERS, APPELLANTS.

*Sale of goods to arrive, with a warranty as to quality—does not render the sale conditional—right of the vendee to sue for a breach of the warranty.*

The defendants agreed to sell to the plaintiffs "110,000 lbs. Russia camel's hair, to arrive from Europe. . . . Hair to be equal to sample." The hair intended to be sold arrived and was tendered to the plaintiffs, who refused to receive it, on the ground that it was inferior to the sample shown to them, and thereafter brought this action to recover damages for the breach of the contract.

*Held,* that the stipulation that the goods should be equal to the sample was not a substantive part of the agreement, and did not render it conditional upon the arrival of goods of the prescribed quality, but amounted to an express warranty of the quality of the goods sold, for a breach of which the plaintiffs were entitled to recover.

APPEAL from a judgment in favor of the plaintiffs, entered upon the verdict of a jury.

On December 6, 1879, the defendants agreed to sell on arrival about 110,000 pounds of camel's hair to plaintiffs, at 15⅜ cents per pound. The agreement was evidenced by a broker's note in the following words:

" Sold for Messrs. A. H. Reitlinger & Co. to Messrs. Dike Bros. about 110,000 lbs. Russia camel's hair, to arrive from Europe, at fifteen and three-eights (15⅜) cents per lb. Terms, net cash. Buyer to remove the hair from the dock upon arrival. Hair to be equal to sample of 762 bale lot. Broker to decide. Tare actual. Broker to examine each bale before weighed.

" PATRICK FARLEY,

" Broker.

" NEW YORK, December 6, 1879."

The evidence shows that the " 762 bale lot," referred to in the broker's note, was a lot which Farley had previously sold for the defendants to one Higgins. The defendants expected some more of this same kind of hair to arrive from Hamburg, and offered to sell the 110,000 lbs. of it on its arrival. About

a week after the 762 bales had arrived and been delivered to Higgins, the defendants notified the broker of the arrival of about 43,000 lbs. of the additional quantity, and requested an examination of it. The broker made the examination and found the quality entirely different from the "762 bale lot" sold to Higgins, and rejected it. The defendant Reitlinger was seen, and he said that "if Mr. Dike didn't take that hair, he had no other hair for him; if he wouldn't take that hair or such hair, he had no other hair— no other hair except that quality." About January 17, another lot of some 23,000 lbs. arrived. This was examined and found to be the same as the first lot of 43,000 lbs. The plaintiff refused to accept the hair.

On January 28 this action was commenced. It was tried on April 15, 1880, and a verdict rendered for plaintiffs for $3,500.

*B. F. Tracy*, for the appellants.

*F. A. Ward*, for the respondents.

GILBERT, J.:

The sold note in this case is an executory contract, for the sale of goods "to arrive." The words "to arrive" import a condition that if the goods do not arrive the vendors shall not be bound by the contract. The extrinsic evidence shows that the contract had reference to goods belonging to the defendants, then in Hamburg, or in transit from that city to New York, a sample of which had been exhibited to the plaintiffs. The contract also contained a stipulation that the goods should be equal to the sample. The main question arises upon the effect to be given to that stipulation. Is it a substantive part of the vendor's agreement to sell, or is it a collateral undertaking amounting to an express warranty of the quality of the goods? We are clearly of opinion that it is the latter.

The import of the contract is that the vendors agreed to sell goods *in esse* of which they were owners, provided they arrived, and that they warranted such goods to be equal to the sample. The evidence shows that goods of an inferior quality did arrive and were tendered to the plaintiffs in performance of the vendor's

agreement, the vendors announcing at the same time that they had no goods of a better quality. We are of opinion that those acts constituted a breach of the contract of sale by the vendors, and entitled the plaintiffs to recover. (*Simond* v. *Braddon*, 2 C. B., N. S., 324; *Jones* v. *Just*, 3 L. R., Q. B., 197; *Cleu* v. *McPherson*, 1 Bosw., 480.) No complaint of the measure of damages applied has been made.

The defendants, upon the authority of *Shields* v. *Pettie* (4 N. Y., 124), insist that the contract of sale was conditional not only upon the arrival of the goods, but also upon their turning out to be of the prescribed quality. In that case · there was no express warranty. The contract was for the sale of No. 1 iron, that description having been used as a designation of the goods intended, and which also indicated the quality of them. The court held that the iron called for by the contract did not arrive, and the contract was at an end. The remark that the iron was of a different quality, simply emphasized the statement that the iron which did arrive was not the iron called for by the contract. In such a case, the contract is at an end, for the reason that the condition on which the vendor's liability depends has not been fulfilled, and the vendee cannot be compelled to accept goods of an inferior quality. In other words, there was no breach of the contract of sale by the vendors, by reason of the condition, and the vendees were not bound to accept goods which they had not agreed to buy. But an express warranty is collateral to the principal contract, and the rule is well settled that the buyer may reject the goods and sue for damages for a breach of the warranty. Indeed, he may receive the goods tendered in some cases without forfeiting his right to recover. (Per HOGEBOOM, J., *Reed* v. *Randall*, 29 N. Y., 374; *Rust* v. *Eckler*, 41 Id., 494; *Day* v. *Pool*, 52 Id., 416; *Parks* v. *Morris Ax & Tool Co.*, 54 Id., 586.) But a vendor cannot, in any case, set up his own breach of warranty in discharge of his liability under the contract. The plaintiffs were not bound to perform or offer to perform the contract after the defendants had declared their inability to perform it. Such act would have been useless, and the law does not require mere formalities in such a case. There was, perhaps, a slight inaccuracy in

the charge of the judge, that the defendants had undertaken that the shipment was engaged, and if it was not, and the goods were not shipped, then there was a breach of the contract. But I do not see how the defendants could have been injured thereby. The judge plainly referred to goods of the description specified in the contract. The contract could not be performed without a shipment of the goods, and it was immaterial whether the breach was attributed to an omission to ship goods such as the contract called for, or to deliver them. These remarks were not pertinent to the facts of the case, and subsequent portions of the judge's charge directed the attention of the jury to the real points in the case. I think the jury could not have understood that a breach of the contract arose from the non-shipment of any goods, when it was undisputed that the defendants had received goods which had been shipped, and had tendered them to the plaintiffs. If the proposition meant that a refusal to send the goods sold forward for delivery was a breach of contract, it was only another form of stating that a refusal to deliver was a breach thereof. The remarks already made, if correct, dispose of the other exceptions taken to the judge's charge, and to his rulings upon the numerous requests to charge, presented by the defendant's counsel, as well as those taken to the rulings upon the trial.

The judgment should be affirmed, with costs.

BARNARD, P. J., and DYKMAN, J., concurred.

Judgment affirmed, with costs.